OPINION OF THE COURT
 

 Ciparick, J.
 

 In this appeal, we are asked to decide whether, in the context of a stop made in the course of a “vertical sweep” of a residential apartment building, reasonable suspicion that a particular person has committed, is committing or is about to commit a crime arose, justifying police detention of a suspect. We conclude that the record supports a finding of reasonable suspicion justifying police detention of the defendant and therefore affirm defendant’s conviction.
 

 On March 29, 1996, New York City Police Sergeant Mulcahy, along with Police Officers Ferguson, Mylott and Brown, conducted a vertical sweep of a four-floor apartment building located on West 158th Street in Manhattan. The purpose of vertical sweeps, or vertical patrols, is to find and apprehend trespassers who are in residential buildings to buy or sell drugs. Often a building owner or manager files a “trespass affidavit” with police stating that the building has been plagued by illegal drug trade and asks police to patrol the building for trespassers. Police then stop people they encounter in the halls to ask for identification and to inquire if they are residents or otherwise lawfully in the building (see
 
 generally People v Powell,
 
 180 Misc 2d 627 [Sup Ct, Bronx County 1999];
 
 People v Carter,
 
 169 Misc 2d 230 [Crim Ct, Kings County 1996]).
 

 In this vertical sweep, Officer Mylott remained on the first floor of the building while the other officers ascended the
 
 *53
 
 stairway to patrol the three floors above. Officer Ferguson testified that he did not encounter anyone as he passed the second and third floors, nor did he notice an open apartment door. On the top floor, he encountered “Flaco,” an individual he knew from previous narcotics arrests. While talking to Flaco, Officer Ferguson heard a voice call “Flaco, Flaco, Flaco” from a lower floor. Ferguson descended the stairway to the third floor where he encountered defendant in the hallway near the open door of apartment 3D. When defendant caught sight of Officer Ferguson, he appeared surprised and momentarily froze. Defendant then turned and approached apartment 3C, as if to knock on its door. However, instead of knocking, defendant again turned and began walking down a nearby staircase. Officer Ferguson approached and said “Excuse me, sir.” Receiving no response, Officer Ferguson instructed Officer Brown, who was in the area, either to “watch” or “hold” defendant. Officer Brown did not physically hold defendant, but defendant stopped.
 

 Officer Ferguson then looked into the open door of apartment 3D and saw a trail of coffee grounds spread across the threshold and, further inside on a coffee table, saw a calculator, a box of rubber bands, a note pad and aluminum foil. Officer Ferguson testified he knew that coffee grounds were frequently used to conceal drugs from police dogs and that the other items he observed were typically used in the sale of drugs.
 

 Officer Ferguson again instructed Officer Brown to hold the defendant. Along with Sergeant Mulcahy, he then entered the apartment to check for possibly armed occupants. No one was inside the apartment; however, police found cocaine in the kitchen. When the officers returned from the apartment and inquired of defendant, he told them he was visiting a third apartment, apartment 3B; however, a woman answering the door said she did not know defendant. Defendant was then placed under arrest. A search of defendant incident to his arrest yielded $1,354, mostly in $20 bills.
 

 Defendant was indicted for criminal possession of a controlled substance, on a theory of constructive possession of the drugs in apartment 3D. Because he lacked standing, defendant did not challenge the search of the apartment, but moved only to suppress the money found on his person. Supreme Court denied suppression. After a jury trial, defendant was convicted of criminal possession of a controlled substance in the first degree. The Appellate Division affirmed the conviction. A Judge of this Court granted leave to appeal and we now affirm.
 

 
 *54
 
 The seizure of a suspect by police must be justified by reasonable suspicion that a crime has been, is being or is about to be committed
 
 (see People v Martinez,
 
 80 NY2d 444, 447 [1992]). The requirement of a reasonable suspicion that a particular person has committed a criminal act as a prerequisite to a forcible stop and temporary detention is part of a continuum of permissible police intrusions in response to escalating evidence of criminal activity. As we stated in
 
 People v De Bour,
 
 “various intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence” (40 NY2d 210, 223 [1976]). The determination of whether the circumstances of a particular case rise to the level of reasonable suspicion is a mixed question of law and fact, beyond our review if the determination is supported by the record.
 

 Here, police detention of defendant required reasonable suspicion that he was engaged in criminal activity. Given that the purpose of the police presence in the building was the detection and apprehension of trespassers, and that Penal Law § 140.05 requires only that one enter or remain illegally upon the premises, the record supports the Appellate Division’s conclusion that a reasonable suspicion existed that defendant was at least trespassing in the building. Defendant’s presence outside the open door to a third floor apartment only moments after a male voice called out to Flaco, together with his suspicious behavior upon seeing Police Officer Ferguson, support that determination. The brief detention that followed was therefore justified.
 

 We also reject as meritless defendant’s challenge to his conviction based on the theory of constructive possession of the cocaine in apartment 3D. Constructive possession, requiring a showing that defendant exercised dominion and control over the evidence found in the apartment, is a fact-laden question
 
 (see
 
 Penal Law § 10.00 [8]). The evidence in this case was sufficient to permit an inference by the trier of fact that defendant did indeed exercise dominion and control over the apartment where the drugs were discovered
 
 (see People v Kennedy,
 
 47 NY2d 196, 201-202 [1979]).
 

 Defendant’s remaining contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed.