People v Wideman (2021 NY Slip Op 01805)





People v Wideman


2021 NY Slip Op 01805


Decided on March 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 25, 2021

109274

[*1]The People of the State of New York, Respondent,
v
Kamil Wideman, Also Known as Rashawn Wideman and Jazz, Appellant.

Calendar Date: February 8, 2021

Before: Egan Jr., J.P., Clark, Aarons, Pritzker and Colangelo, JJ.


Mitch Kessler, Cohoes, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.



Egan, J.P.
Appeal from a judgment of the County Court of Clinton County (Richards, J.), rendered January 23, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree (two counts) and conspiracy in the fourth degree.
On August 19, 2015, the State Police stopped a 2002 GMC Envoy on Route 9 in the Town of Champlain, Clinton County to check on the welfare of defendant, a reported missing person. As troopers began to interview defendant and pat frisk him, defendant fled, during the course of which a plastic baggie came out of his pants. Defendant was eventually located and arrested and the contents of the plastic baggie were field tested, with a positive test result for heroin and cocaine.
Defendant was subsequently charged by indictment with two counts of criminal possession of a controlled substance in the third degree, one count of conspiracy in the fourth degree and one count of using drug paraphernalia in the second degree. A stipulation in lieu of motions was thereafter entered into and, following a suppression hearing, County Court (McGill, J.) denied defendant's motion to suppress the evidence seized during the traffic stop. Following a jury trial, defendant was convicted of two counts of criminal possession of a controlled substance in the third degree and one count of conspiracy in the fourth degree but was acquitted of criminally using drug paraphernalia. Defendant's motion to set aside the verdict on the ground that the People failed to timely disclose certain Brady material was denied. County Court (Richards, J.) thereafter sentenced defendant, as a second felony offender, to concurrent prison terms of 10 years to be followed by three years of postrelease supervision on the two convictions of criminal possession of a controlled substance in the third degree and to a lesser concurrent prison term on the remaining conviction. Defendant appeals.
Defendant contends that County Court (McGill, J.) erred in denying his motion to suppress the heroin and cocaine that were found following the traffic stop inasmuch as the police lacked lawful authority to detain, frisk or pursue him when he fled. We disagree. Where the police have executed a lawful stop of a vehicle,[FN1] "a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants . . . to step out of the [vehicle]" (People v Garcia, 20 NY3d 317, 321 [2012]; see People v Robinson, 74 NY2d 773, 775 [1989], cert denied 493 US 966 [1989]; People v Martin, 156 AD3d 956, 957 [2017], lv denied 31 NY3d 985 [2018]). In turn, "[a]n officer is authorized to conduct a protective pat frisk when he or she has 'knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety'" (People v Carey, 163 AD3d 1289, 1290 [2018], lv denied 32 NY3d 1124 [2018], quoting People v Batista, 88 NY2d 650, 654 [1996]; see People v Issac, 107 AD3d 1055[*2], 1057 [2013]). A suppression court's factual determinations and credibility assessments are entitled to great weight and will not be overturned on appeal unless clearly erroneous or contrary to the evidence (see People v Rudolph, 170 AD3d 1258, 1259 [2019], lv denied 34 NY3d 937 [2019]; People v McClain, 145 AD3d 1192, 1193 [2016], lv denied 28 NY3d 1186 [2017]).
The evidence at the suppression hearing established that, on August 18, 2015, the City of Plattsburgh Police Department received a telephone call from an attorney in New Jersey who reported that she had received text messages from her client, defendant, leading her to believe that he had been kidnapped or abducted, was in the Plattsburgh area and was potentially in danger. Police commenced a "File 6" or missing and endangered persons investigation and, as part thereof, obtained defendant's cell phone records, which indicated that his cell phone was active and had recently made calls to a telephone number belonging to one Brenna Lonsbury, a resident of the Town of Chazy, Clinton County. Police located Lonsbury the following morning and, upon being shown defendant's picture, she identified him as one of two individuals who had spent the last four days at her apartment and indicated that these individuals had in their possession a large quantity of heroin and cocaine. Lonsbury indicated that she had given defendant a ride to the City of Plattsburgh, Clinton County earlier that morning and last saw him getting into a "dark blue" sport utility vehicle and that the other individual, Shaquan Spencer, was at her apartment.
Police thereafter obtained Lonsbury's written consent to search her apartment and, upon their arrival, located Spencer and a quantity of heroin and cocaine. While police were still present at the apartment, they observed a blue 2002 GMC Envoy drive by with defendant in the front passenger seat. Two state troopers followed after the Envoy and then stopped it. At a trooper's request, defendant stepped out of the vehicle and walked to the rear thereof, where one of the troopers proceeded to conduct a pat frisk. Defendant then fled, dropping a plastic baggie as he ran across a field. Troopers pursued defendant across the field, over a creek, through the woods and into a cornfield before taking him into custody. Troopers subsequently secured the plastic baggie that came out of defendant's pants and a subsequent field test of its contents was positive for the presence of heroin and cocaine.
The traffic stop and subsequent request for defendant to exit the vehicle were permissible given that defendant was a reported missing and possibly endangered person and was located in a vehicle with two other unknown individuals (see People v Garcia, 20 NY3d at 321; People v Robinson, 74 NY2d at 775). Defendant was not unlawfully detained as the troopers' questions pertained solely to ascertaining defendant's identity, were not accusatory in nature and lasted only a matter of minutes [*3]before he fled (see People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]; People v Martin, 156 AD3d at 957-958). The pat frisk of defendant was justified as he was the subject of a missing and endangered person report and a parallel narcotics investigation such that the trooper had a reasonable basis to perform a protective pat frisk (see People v Batista, 88 NY2d at 653-654; People v Martin, 156 AD3d at 958; People v Issac, 107 AD3d at 1058; compare People v Driscoll, 101 AD3d 1466, 1467 [2012]). Accordingly, defendant's subsequent flight from police and loss of a plastic baggie containing narcotics was not the product of any unlawful police conduct, and County Court appropriately denied his motion to suppress the heroin and cocaine found following the stop.
Defendant next contends that the modified Allen charge that County Court (Richards, J.) provided to the jury was coercive. However, defendant failed to preserve this argument for appellate review. Although defendant disagreed with County Court's decision to provide a modified Allen charge, as opposed to conducting an in camera inquiry of the juror, he failed to render a timely and appropriate objection to the Allen charge that was subsequently recited, nor did he raise any objection to the purportedly coercive nature of the charge as he presently argues on appeal (see People v Morrison, 127 AD3d 1341, 1345 [2015], lv denied 26 NY3d 932 [2015]; People v Murphy, 166 AD2d 805, 805 [1990]).
Finally, we reject defendant's contention that County Court erred in failing to set aside the verdict based upon the People's purported Brady violation. It is axiomatic that "[t]he People have an obligation under Brady to disclose evidence and information in their possession that is both material and favorable to the defense" (People v Giuca, 33 NY3d 462, 473 [2019]; People v Garrett, 23 NY3d 878, 884 [2014]). To establish a Brady violation, a defendant must demonstrate that "(1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Rong He, 34 NY3d 956, 958 [2019] [internal quotation marks and citation omitted]; see People v Houze, 177 AD3d 1184, 1187 [2019], lv denied 34 NY3d 1159 [2020]).
Here, even assuming, without deciding, that defendant established the first two elements of a Brady violation based upon the People's failure to timely disclose that a State Police investigator had been accused of providing incorrect testimony to a grand jury in an unrelated criminal proceeding,[FN2] defendant failed to establish the third prong — i.e., materiality or that there was reasonable possibility that, had it been timely disclosed, this evidence would have changed the outcome of the proceeding (see People v Giuca, 33 NY3d at 477-478; People v Yedinak, 157 AD3d 1052, 1056-1057 [2018]).[FN3] Notably, there was ample other [*4]evidence presented at trial establishing defendant's possession of the subject narcotics. Lonsbury testified that she had observed Spencer provide defendant with heroin and cocaine on multiple occasions during the relevant time period, and two other troopers that were present when defendant fled witnessed the plastic baggie exit from defendant's pants. Accordingly, given the strength of the evidence against defendant, we do not find that disclosure of the subject impeachment evidence would have resulted in a different outcome (see People v Garrett, 23 NY3d at 892; People v Fuentes, 12 NY3d 259, 265 [2009]; People v Werkheiser, 171 AD3d 1297, 1305 [2019], lv denied 33 NY3d 1109 [2019]).
Clark, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant concedes that the initial traffic stop of the vehicle was lawful.

Footnote 2: Although the crux of defendant's trial defense was that the investigator planted the subject narcotics, the relevant impeachment evidence consisted of an allegation that the investigator had testified incorrectly in an unrelated criminal case, indicating in such testimony that he had overheard an informant conduct a drug transaction in real time through a wire when, in fact, the informant had not been equipped with any such listening device.

Footnote 3: The People disclosed this information shortly after the jury commenced deliberations.